[No. 15568.  Department Two.  December 2, 1919.]

THE STATE OF WASHINGTON, *on the Relation of F. A. Mead, Plaintiff,* v. THE SUPERIOR COURT FOR YAKIMA COUNTY, *Defendant.*[1]

INFANTS (4)—CUSTODY OF DEPENDENTS—POWERS OF COURT—MODIFICATION OF ORDER—PROCEEDINGS—DISCRETION. The juvenile court law, Rem. Code, § 1987-1 *et seq.*, having given the court power to modify or set aside an order for the custody of a child without providing the manner of its exercise or defining the person entitled to institute the proceedings, it is discretionary for the court to inquire into the interest of a party seeking the relief before directing process, which does not issue as a matter of right.

VENUE (20)—CHANGE — PREJUDICE OF JUDGE — TIME FOR APPLICATION. Since process to revoke an order for the custody of a child is not a matter of right, one who invokes the discretion of the court by filing an application for a modification cannot, after its exercise, ask a change of judges on account of prejudice, since it is not timely, under Rem. Code, §§ 209-1, 209-2, requiring an application for the change to be made on the party's first appearance.

Application filed in the supreme court September 30, 1919, for a writ of prohibition to prevent the superior court for Yakima county, Taylor, J., from hearing a cause, and to compel the transfer to another department of the court.  Denied.

*Reynolds, Ballinger & Hutson,* for relator.

FULLERTON, J.—The relator, F. A. Mead, prays for a writ of this court prohibiting the Honorable Harcourt M. Taylor, one of the judges of the superior court of Yakima county, from presiding at the hearing of a certain cause pending in the court named, and to compel him to transfer the proceedings to another department of the court for such hearing.

Judge Taylor presides over the juvenile department of the superior court of Yakima county.  In January,

[1]Reported in 185 Pac. 628.

1919, a petition was filed with the clerk of the superior court of the county named showing that there was within that county, in the custody of Lish Worrel and Lula Worrel, his wife, one Frederick A. Mead, some three years of age, who was a dependent child, praying that the superior court deal with such child as provided in the juvenile court law. Proceedings were had necessary to bring the interested parties before the court, and a hearing entered upon, at the conclusion of which the court found that the child was a dependent child within the meaning of the law cited and that the welfare of the child demanded that it be continued in the custody of Worrel and wife, and entered an order to the effect that the child be continued in their possession until the further order of the court.

On August 7, 1919, the relator petitioned the superior court for a modification of the order relating to the custody of the child, setting forth in the petition that he was the father of the child and a suitable and proper person to have its care and custody. On filing the petition, the relator applied to the court, Judge Taylor presiding, for an order directed to the persons having the custody of the child to show cause on a day certain why the order awarding them such custody should not be modified and an order entered in accordance with the prayer of the petition. The presiding judge, on the presentation of the petition to him, expressed a doubt whether the petition alleged facts sufficient *prima facie* to justify the relief asked, but after hearing counsel, granted the order, fixing August 19, 1919, as the day upon which the application would be heard. On the return day fixed, the attorney for the relator filed an affidavit under §§ 209-1 and 209-2 of the Code (Rem.) asking a transfer of the cause to another department of the court for trial, averring in the language of the statute that the judge

before whom the cause was assigned for hearing was prejudiced against the relator so that he believed he could not have a fair trial before such judge. The request for a transfer was denied by the court on the ground that the application came too late, whereupon the relator applied to this court for the writ before mentioned.

Relative to the transfer of causes under the statute cited, this court has held that the fact of prejudice, when suggested in the form prescribed, is not a matter of inquiry; that the fact is established by the statutory affidavit; and that, when the application is timely made, it must be granted as matter of right. We have further held that the timeliness of the application is to be tested by the status of the proceeding at the time the application is made; that the party desiring the change must make the application at his first appearance in the cause; that he must move before the judge presiding has made an order or a ruling involving discretion, as to hold otherwise would be to hold that the application could be made at any stage of the proceedings, a holding that would cripple and handicap the courts in their attempted administration of the law to an intolerable extent.

"We cannot conclude that it was intended by the act that a party could submit to the jurisdiction of the court by waiving his rights to object until by some ruling of the court in a case he becomes fearful that the judge is not favorable to his view of the case. In other words he is not allowed to speculate upon what rulings the court will make on propositions that are involved in the case and, if the rulings do not happen to be in his favor, to then for the first time raise the jurisdictional question." *State ex rel. Lefebvre v. Clifford*, 65 Wash. 313, 118 Pac. 40.

The sole question for determination is, was the application for a transfer of the cause timely made. The

first section of the act cited (Laws of 1913, p. 520; Rem. Code, § 1987-1 *et seq.*) ; defines dependent children and provides that, for the purposes of the act, all such children shall be considered wards of the state, and subject to the custody, care, guardianship and control of the superior court as in the act provided. Subsequent sections give the court power, when it finds a child to be dependent, to commit the child to the care of some reputable citizen, whereupon the child becomes, unless otherwise ordered by the court, the ward of, and subject to the guardianship of, the individual to whose care it is committed, and a later section provides that any order made by the court in the case of a dependent child may at any time be changed, modified or set aside, as to the judge may seem meet and proper. While the statute provides who may institute a proceeding to determine whether a child is or is not a dependent child, and provides somewhat minutely the manner in which the child and the parties in interest are brought before the court, it is silent concerning the manner by which a judgment finding the child to be dependent may be changed, modified or set aside. It does not define the persons who may institute such a proceeding, nor the manner in which a proceeding may be instituted, nor how the parties interested therein may be brought before the court. In other words, the statute grants the power, but is silent as to the manner of exercising the power. Since, however, the power is granted, it was the intent of the law-making body that it should be exercised. The rule is that, when a general power is given, but the mode of its exercise is not prescribed, the procedure is to be regulated by the court in the exercise of its sound discretion. This would mean that, in a case like the one at bar, where no specifically defined person is granted the right to institute the proceeding, the court can in-

quire into the interest of the person seeking its institution and into the matter which he sets forth as his right so to do, before it directs that the parties representing the opposing interests be brought into court and required to answer. Contrary to the relator's contention, therefore, process does not issue on the mere filing of the application as matter of right. The application invokes the discretion of the court, and the court may, in the exercise of that discretion, grant or refuse to grant process on the application.

It follows in the instant case that, when the relator applied to the court for the issuance of process on his application for a modification of the order in question, he invoked the discretion of the court, and that his application for a change of judge, since it was made after that time, came too late under the rules as we have heretofore defined them.

The peremptory writ is denied, and the alternative writ heretofore issued is quashed.

HOLCOMB, C. J., MOUNT, MITCHELL, and TOLMAN, JJ., concur.