[No. 39841.   En Banc.   March 5, 1968.]

*In the Matter of the Welfare of* Shirley Ann Estes, *Petitioner, v.* Blaine Hopp, Jr., *Judge of the Superior Court for Yakima County, Respondent.**

*James S. Scott* (of *Smith, Scott & Hanson*), for petitioner.

*Reported in 438 P.2d 205.

264

*Lincoln E. Shropshire* and *Donald R. Shaw,* for respondent.

NEILL, J.—We are urged to overrule our prior cases denying jury trials and bail in juvenile court proceedings and to invalidate the portion of RCW 13.04.030 which prohibits a jury trial in juvenile cases.

On June 26, 1967, petitioner herein, then 16 years old, was apprehended near the Canadian border by the police. At the time of her apprehension, she was in the company of her husband and her brother, who were both charged with unlawfully taking a vehicle without the owner's permission. A delinquency petition was filed in juvenile court alleging that she had taken a vehicle without the owner's permission and that she was in need of the court's care, consideration and planning. Counsel was appointed for her who, prior to the commencement of the delinquency hearing, made both oral and written requests that the proceeding "be heard by a jury as in any other criminal case." The requests were denied.

At the delinquency hearing, a juvenile probation officer was allowed to testify as to statements made by petitioner while she was held in a juvenile detention home. The police officer who signed the delinquency petition testified that petitioner had been advised of some of her rights as a possible criminal defendant. The prosecution thereupon rested its case. Petitioner moved that the court dismiss the action because of insufficient evidence to establish the unlawful taking of another's vehicle. The prosecution was then granted a continuance of 1 hour and, when court reconvened, was allowed to reopen its case. Petitioner made timely and proper objections to the testimony of the juvenile probation officer, to the continuance, and to the reopening.

When the case was reopened, the prosecution presented three additional witnesses: (1) the police officer who returned petitioner from the Canadian border; (2) the owner of the stolen automobile; and (3) petitioner's brother, who testified that petitioner knew the car in which she was

riding was stolen. The prosecution again rested and petitioner again moved for dismissal. Over petitioner's objections, the prosecution was then allowed to amend the pleadings to conform to the proof.

Petitioner presented no evidence on her behalf. The court found her to be a delinquent child and ordered her confined in a juvenile institution until further order of the court. Petitioner's request that the trial court establish bail, pending the outcome of the hearing in this court, was denied.

We granted a writ of certiorari. Petitioner also seeks a writ of mandamus ordering the trial court to set bail for the petitioner pending the outcome of this appeal or in the alternative a writ of prohibition, prohibiting the trial court from placing her in a juvenile institution until bail has been set.

Petitioner assigns error to the denial of her request for a trial by jury. RCW 13.04.030 specifically provides that all cases within the jurisdiction of superior courts under the juvenile court act "shall be tried without a jury", and RCW 13.04.240 provides that "An order of court adjudging a child delinquent or dependent under the provisions of this chapter shall in no case be deemed a conviction of crime." Similarly, the holdings in our prior decisions have affirmed the proposition that proceedings in a juvenile court are not criminal in nature (*In re Lewis*, 51 Wn.2d 193, 316 P.2d 907 (1957); *Mills v. Park*, 67 Wn.2d 717, 721, 409 P.2d 646 (1966)), and have sustained the constitutionality of juvenile court proceedings which deny public trials by jury. *Weber v. Doust*, 84 Wash. 330, 146 Pac. 623 (1915). See Annot., 100 A.L.R.2d 1241 (1965). Petitioner argues, however, that the holding in *In re Gault*, 387 U.S. 1, 18 L. Ed. 2d 527, 87 Sup. Ct. 1428 (1967), requires us to overrule our prior decisions involving this issue and to invalidate the portion of RCW 13.04.030 which prohibits a jury trial in juvenile proceedings. We do not agree with this contention.

■ Since the adoption of the first juvenile court act in 1899 in the state of Illinois, the concept of juvenile courts has been that a child who has committed a criminal offense,

who is wayward, incorrigible, or ungovernable, is to be recognized as "delinquent" and subject to treatment under a system of probation and rehabilitation, rather than as a criminal. The focus is on the offender and the factors which brought him before the court, rather than on his offense. However, as often is the case, the altruistic concepts embodied in the 1899 spirit of the juvenile court acts have come headlong into the 1968 construction of "due process." The entire idea that juvenile offenders should be treated as wards of the state through a special, nonadversary proceedings is under attack in some quarters and many suggestions are being made for modification. However, it is of interest to note that the recommended changes set forth by the President's Commission on Law Enforcement and Administration of Justice[1] do not include the institution of jury trial. Further, we note that the Commission's Task Force Report "Juvenile Delinquency and Youth Crime" (1967), p. 38, approves an observation[2] that "A jury trial would inevitably bring a good deal more formality to the juvenile court without giving the youngster a demonstrably better fact-finding process than trial before a judge."

The precise holding in *Gault, supra,* was that in all juvenile hearings which may result in commitment to an institution in which the juvenile's freedom is curtailed: (1) notice of hearings must be given so as to afford the minor a reasonable opportunity to prepare; (2) the minor and his parents must be notified of the child's right to counsel, including court-appointed attorney if they are unable to afford counsel; (3) the constitutional privilege against self-incrimination is as applicable in the case of juveniles as it is with respect to adults; and (4) in the absence of a valid confession, a determination of delinquency and an order of commitment to a state institution cannot be sustained in the absence of sworn testimony subjected to the opportunity for cross-examination. While recognizing that

---

[1]"The Challenge of Crime in a Free Society" (1967), pp. 78-88.

[2]Paulsen, *Fairness to the Juvenile Offender,* 41 Minn. L. Rev. 547, 559 (1957).

in the instant case the above-mentioned requirements were met, and further that *Gault* did not specifically determine that jury trials are required in juvenile proceedings, petitioner nevertheless argues that, under the reasoning of *Gault,* a juvenile accused of an act which could lead to his institutionalization is entitled to the same procedural and constitutional rights as an adult accused of a crime, which rights would include a jury trial.

We do not believe, however, that either the specific holding in *Gault* or the reasoning on which that holding is based requires us to accept petitioner's position. The Supreme Court was quite careful to narrowly define both the scope of its inquiry and the effect of its holding by stating:

> We do not in this opinion consider the impact of these constitutional provisions upon the totality of the relationship of the juvenile and the state. We do not even consider the entire process relating to juvenile "delinquents." . . . We consider only the problems presented to us by this case. These relate to the proceedings by which a determination is made as to whether a juvenile is a "delinquent" as a result of alleged misconduct on his part, with the consequence that he may be committed to a state institution. As to these proceedings, there appears to be little current dissent from the proposition that the Due Process Clause has a role to play. *The problem is to ascertain the precise impact of the due process requirement upon such proceedings.* [p. 13]
>
> . . . .
>
> [T]he observance of due process standards, intelligently and not ruthlessly administered, *will not compel the States to abandon or displace any of the substantive benefits of the juvenile process.* . . . [p. 21]
>
> . . . .
>
> We do not mean by this to denigrate the juvenile court process or to suggest that there are not aspects of the juvenile system relating to offenders which are valuable. . . . For example, the commendable principles relating to the processing and treatment of juveniles separately from adults are in no way involved or affected by the procedural issues under discussion. Further, we are told that one of the important benefits of the special juvenile court procedures is that they avoid classifying the juvenile as a "criminal." The juvenile offender is now

classed as a "delinquent." There is, of course, no reason why this should not continue. . . . [p. 22]

. . . .

We announced [*Kent v. United States,* 383 U. S. 541, 16 L. Ed. 2d 84, 86 Sup. Ct. 1045 (1966)] . . . that while "We do not mean . . . to indicate that the hearing to be held must conform with all of the requirements of a criminal trial or even of the usual administrative hearing; but we do hold that the hearing must measure up to the essentials of due process and fair treatment." We reiterate this view, here in connection with a juvenile court adjudication of "delinquency," . . . . [p. 30] (Footnotes omitted.) (Italics ours.) *In re Gault,* 387 U. S. 1, 18 L. Ed. 2d 527, 87 Sup. Ct. 1428 (1967).

Our research has disclosed only two other appellate cases in which this issue has been raised subsequent to *Gault, supra: Commonwealth v. Johnson,* 234 A.2d 9 (Pa. 1967), and *Peyton v. Nord,* Vol. 6, No. 19, State Bar Bulletin and Advance Opinions of New Mexico (Oct. 1967), at 218, In *Johnson, supra,* the court held that a jury trial in a juvenile proceeding was not required. Conversely, in *Peyton, supra,* the New Mexico court considered its juvenile court statute and held that a jury trial was necessary at the hearing to determine whether or not the minor is, in fact, delinquent. The majority of the New Mexico court does not discuss *Gault, supra,* but the dissenting judge examined *Gault* and reached the conclusion we deem to be correct.

We do not believe that the Supreme Court's opinion in *Gault, supra,* is to be considered as a mandate to abandon this beneficial concept of the juvenile court system. Rather, it is a direction that the juvenile be offered the benefits of an informal hearing at which rules of fairness and basic procedural rights are observed. Such results can be obtained without the formality of a jury trial. One of the substantial benefits of the juvenile process is a private, informal hearing conducted outside the presence of a jury.

■ Petitioner next assigns error to the trial court's allowing the juvenile officer to testify as to statements which he received from petitioner while she was held without bail in the juvenile detention home. This assignment of error,

however, is neither argued by petitioner in her brief nor supported by any other argument made in support of other assignments of error, so we need not consider it. *Seattle v. Schaffer,* 71 Wn.2d 600, 430 P.2d 183 (1967); *State v. Bell,* 59 Wn.2d 338, 368 P.2d 177 (1962); *Murray v. Mossman,* 52 Wn.2d 885, 329 P.2d 1089 (1958). Moreover, it appears from the record that the trial court refused to consider any of the juvenile officer's testimony in ruling that petitioner was a delinquent child.

■ Petitioner's third assignment of error is that the trial court erred in refusing to set bail for her pending the outcome of this appeal. Petitioner argues that, in effect, she has been convicted of a crime; that she has been restrained of her liberty by being placed in the custody of the Department of Institutions; and is therefore entitled to bail as a matter of right under Const. art. 1, § 20, and under RCW 10.73.040. Petitioner further contends that, if we determine that a minor, accused of violating a law and therefore subject to incarceration in a state institution, is to be given the same procedural rights as an adult accused of a similar crime, then we must necessarily conclude that petitioner is entitled to bail pending the outcome of this appeal.

Petitioner's reliance on Const. art. 1, § 20 and on RCW 10.73.040 is inappropriate since these provisions are applicable only to criminal prosecutions, and RCW 13.04.240 specifically provides that juvenile court proceedings shall not be considered criminal in nature. In *State ex rel. Gray v. Webster,* 122 Wash. 526, 211 Pac. 274 (1922), we held that a delinquent minor committed to a reform school is not entitled to bail pending appeal from such commitment. Furthermore, we find nothing in the *Gault* holding which requires us to reverse this long-standing rule. Denying a minor bail pending his appeal from a juvenile court order in no way denies him the "essentials of due process or fair treatment." To the contrary, allowing a minor to go free on bail would in many, if not most, cases be adverse to the minor's best interests and welfare; and, as we have stated before, "The purpose of the juvenile court act is the wel-

fare of dependent or delinquent children, and its various provisions should be construed with that purpose in view." *McClain v. Superior Court,* 112 Wash. 260, 263, 191 Pac. 852 (1920). As aptly stated by respondent in its brief:

> To allow a child judged delinquent or dependent to go free on bail, pending appeal, would merely be returning him to the environment which was the cause of his problems initially! Many times, in fact, the delinquents really have nowhere to go. Most have come from environments totally adverse to their best interests. There is no guidance and nothing to do but return to their previous delinquent behavior. By placing the child in a home or training school, he receives the care and training he would not otherwise receive, and contrary to the situation in some states, juveniles in Washington are not to be detained in jail or confined with adult convicts. (RCW 13.04.115)

Again, it is of interest to note that the President's Task Force Report on "Juvenile Delinquency and Youth Crime," *supra,* p. 36, in discussing bail, states, "In any event, it is one of those attributes of the criminal process that it is wise for the juvenile court system to be free of."

■ Petitioner finally assigns error to the trial court's granting the prosecution a continuance and allowing the prosecution to reopen its case and call additional witnesses after petitioner's motion for dismissal. It appears from the record that the prosecution was under the impression at the commencement of the hearing that petitioner had already been found delinquent; that the matter for hearing was her status as such; and that her motion for dismissal was the first time the prosecution was aware that the hearing was of a trial nature. We have previously held that the granting of a continuance and the reopening of a cause for additional evidence is within the discretion of the trial court and that the trial court's actions in this regard will not be reversed except upon a showing of an abuse of discretion and prejudice resulting to the complaining party. *State v. Miles,* 168 Wash. 654, 13 P.2d 48 (1932); *Niemeier v. Rosenbaum,* 189 Wash. 1, 63 P.2d 424 (1936); *Sweeny v. Sweeny,* 52 Wn.2d 337, 324 P.2d 1096 (1958); *Rochester v. Tulp,* 54

Wn.2d 71, 337 P.2d 1062 (1959); *Tsubota v. Gunkel*, 58 Wn.2d 586, 364 P.2d 549 (1961).

The trial court did not abuse its discretion in delaying the hearing for one hour and reopening the case after the noon recess.

The petition for writs of mandamus and prohibition is denied. Judgment is affirmed.

FINLEY, C. J., HILL, WEAVER, ROSELLINI, HUNTER, HAMILTON, and HALE, JJ., concur.

\*Reported in 438 P.2d 185.