[No. 39752.    Department One.    March 14, 1968.]

*In the Matter of the Welfare of* SANDRA LEE BOATMAN. CARL FRANK BOATMAN *et al., Petitioners,* v. THE STATE OF WASHINGTON, *Respondent.**

*Reported in 438 P.2d 600.

Hamilton, Lynch & Kuntz, for petitioners.

E. R. Whitmore, Jr. and David J. Whitmore, for respondent.

NEILL, J.—A writ of certiorari was issued out of this court to review a ruling of the Chelan County Juvenile Court that it has no jurisdiction to consider a petition to change or modify an order permanently depriving a father of parental rights relating to his minor daughter.

In October, 1964, a petition was filed in the Chelan County Superior Court alleging that the 9-month-old daughter of petitioner Carl Frank Boatman and his wife, Diana, was a minor having no parent or guardian willing to exercise, or capable of exercising, proper parental control. A temporary order was entered, adjudging the child to be dependent and a ward of the juvenile court according to the provisions of RCW 13.04.010. At a subsequent hearing, the mother of said child was permanently deprived of all parental rights. As a result of a third hearing, an order was entered March 21, 1966, permanently depriving the petitioner of his parental rights to said child. Custody of the child was given to the state Department of Public Assistance for the purpose of adoption. Although petitioner was incarcerated in the Washington State Reformatory throughout all of the aforementioned proceedings, he was represented by counsel at the hearing which deprived him of parental rights. The testimony of petitioner, however, was not proffered, either by deposition or by motion to

transfer the petitioner to Chelan County for the purpose of appearing personally at the hearing.

Petitioner filed a notice of appeal from the permanent deprivation order of March 21, 1966. While such appeal was pending in this court, he petitioned the juvenile court to take further testimony, his own, as he had been released from custody and was furnishing support for the minor child. The juvenile court pointed out to petitioner that it had no jurisdiction to proceed further in the matter because an appeal was then pending before this court; so petitioner dismissed his appeal. The juvenile court thereupon conditionally received the testimony of petitioner, subject to its determining whether or not it had any jurisdiction to further entertain or consider any testimony after entering the order of March 21, 1966. On June 16, 1967, the juvenile court entered its order determining that it had no such jurisdiction and confirmed the prior order of permanent deprivation.

Petitioner assigns as error the ruling that the court had no jurisdiction to hear or entertain further testimony in the juvenile court proceedings.

Petitioner contends that by the terms of RCW 13.04.150,[1] any and all orders made by the juvenile court affecting a dependent child may be changed, modified or set aside at any time during the wardship and points to our language in *In re Ross*, 45 Wn.2d 654, 277 P.2d 335 (1954), to support his position. Respondent points out that the order which was the subject matter of *In re Ross, supra,* was an interim order and not a permanent order of deprivation. Respondent further points to *State ex rel. Mead v. Superior Court,* 108 Wash. 636, 185 Pac. 628 (1919), for the proposition that it is left to the discretion of the juvenile court as to who

---

[1]RCW 13.04.150 provides: "Any order made by the court in the case of a dependent or delinquent child may at any time be changed, modified or set aside, as to the judge may seem meet and proper."

Similarly, RCW 13.04.110 provides in part: ". . . the court shall have power to order a change in the care or custody of such child, if at any time it is made to appear to the court that it would be for the best interests of the child to make such change."

may petition the court for modification and under what circumstances such petition will be heard. Respondent thus concludes that the juvenile judge herein was acting within his prerogative in refusing to consider petitioner's proffered testimony. We think it clear from a reading of the order entered on June 16, 1967, by the juvenile court that its refusal to consider the testimony of petitioner was not based on its exercise of discretion, but was based on its belief that it had no power or jurisdiction to consider the matter further.

Respondent argues, however, that irrespective of the language of RCW 13.04.150 the order entered on March 21, 1966, was a final order depriving petitioner of his parental rights to the minor child; that the dependency of the minor was previously determined by the court and not modified; and that since the March 21 order was final it was subject only to motion to vacate or modify under RCW 4.72.010.

We have reviewed our prior decisions involving the juvenile court's jurisdiction and its power to modify or set aside its orders. The following rules may be derived therefrom:

(1) The status of a minor as a ward of the state and the juvenile court's power over such minor, being based on the juvenile court's finding that he or she is a dependent or delinquent child, cannot be terminated except on a finding that the minor is no longer dependent or delinquent. *In re Jones*, 41 Wn.2d 764, 252 P.2d 284 (1953); *In re Walker*, 43 Wn.2d 710, 263 P.2d 956 (1953).

(2) Once a minor is found to be dependent and thus made a ward of the state, the minor is subject to the continuing jurisdiction of the juvenile court until the child's condition of dependency ceases. *In re Chartrand*, 103 Wash. 36, 173 Pac. 728 (1918); *State ex rel. De Bit v. Superior Court*, 103 Wash. 183, 173 Pac. 1014 (1918); *In re Walker, supra; State v. Speer*, 36 Wn.2d 15, 216 P.2d 203 (1950); *In re Parker*, 49 Wn.2d 104, 298 P.2d 520 (1956).

(3) Once a juvenile court, upon a finding of delinquency or dependency, has invoked its jurisdiction over a minor,

that court has the power to change, modify or set aside its prior orders affecting the minor so long as the minor remains under the continuing jurisdiction of the court. *In re Ross, supra; State ex rel. De Bit, supra; In re Parker, supra;* RCW 13.04.110 and 13.04.150. With respect to the juvenile court's power to change its orders, neither the statutes nor our decisions make any distinction between temporary or interim orders and final orders permanently depriving custody from, or awarding custody to, interested parties.

(4) Where parties seek to have custody orders modified or set aside, it is discretionary for the juvenile court to inquire into the interest of the parties seeking relief before directing process, which does not issue as a matter of right. *State ex rel. Mead, supra.*

(5) The best interests of the child is the primary consideration on a petition for the modification of an order regarding the child's custody. *In re Parker, supra.*

(6) When a juvenile court awards permanent custody of a minor child to a person or agency with authorization for such custodian to consent to the child's adoption, the juvenile court may, in its discretion, completely relinquish its jurisdiction over such child, notwithstanding the Juvenile Court Law provides for continuing jurisdiction. *McClain v. Superior Court,* 112 Wash. 260, 191 Pac. 852 (1920). This is not inconsistent with (1) and (2) above as the court may thus determine that the child, now having a proper custodian, is no longer dependent or delinquent.

Applying the foregoing rules to the instant case, it is clear that the juvenile court had the power to modify or set aside its permanent deprivation order of March 21, if the court still had jurisdiction over the child at the time petitioner sought such modification. Stated conversely, if the juvenile court had relinquished its jurisdiction over the child by the March 21 order, then the court had no power to modify that order. Our holding in *McClain, supra,* is dispositive of this issue. In that case, the juvenile court of Clark County ordered that the child (p. 261)

"be and hereby is committed to the permanent custody of the Washington Children's Home Society, of Seattle, Washington, and the said society is hereby authorized and empowered to consent to the adoption of the said child by such person or persons as shall, by the said society, be found competent and desirous of so doing."

Subsequently, a petition for adoption was brought before the Chelan County Superior Court, to which adoption the society had consented. The Chelan County court refused to consider the petition, ruling that it had no jurisdiction because the Clark County Juvenile Court had continuing jurisdiction over the child. On appeal we held that the Chelan County Superior Court had jurisdiction to consider the adoption petition because the Clark County Juvenile Court had relinquished its jurisdiction over the child when it awarded the child's permanent custody to the society with authorization and power to consent to its adoption. We therein stated at 264:

To hold that, by this act, the juvenile court did not release all of its jurisdiction over the child would be, in substance, to hold that such court had no power to release its jurisdiction during the minority of the child. Such a construction would, it seems to us, manifestly be in violation of the spirit and purpose of the act. Certainly, the juvenile court could consent to the legal adoption of its ward or to its marriage, and, under those circumstances, the court must of necessity lose its jurisdiction over the child. If it can do these things and lose its jurisdiction, it can surrender the entire control of the child to a society incorporated for the purpose of receiving such children and finding homes for them. Unquestionably the Clarke county court, by its order giving to the society the permanent custody and care of this child, and authority to consent to its legal adoption, intended thereby to relieve itself of any further obligation to the child and to rid itself of all jurisdiction as a juvenile court over it.

Indeed, the juvenile court laws expressly authorize the court to do the very thing which it has done in this instance, for it is provided that "such association shall have authority, with the consent of the court, to place such child in a family home, either temporarily or for adoption." § 1987-9. The fact that the act provides gener-

ally that the court shall not lose jurisdiction, but shall have power and authority to review or rescind any order theretofore made concerning the welfare of the child, does not violate the idea that such court may, if it see fit and under proper circumstances, entirely rid itself of jurisdiction. The idea of the legislature was that the court should retain jurisdiction under all circumstances to administer to the needs and for the protection of the child, but this does not mean that the court may not, in the exercise of its discretion, permanently dispose of the child so as to entirely lose jurisdiction of it.

In the instant case, it is clear that the juvenile court did not intend to relinquish its jurisdiction over the child when it entered the permanent deprivation order of March 21, 1966, the material portions of which are:[2]

1. That Sandra Lee Boatman is still a dependent child and *shall remain a ward of this court.*

2. That Carl Frank Boatman, the father of said minor, is hereby permanently deprived of his parental rights to the said minor and to the care, custody, and control of said minor.

. . . .

4. That the said minor shall be placed under the supervision and jurisdiction of the Chelan County Juvenile Department, which shall place her care with the State Department of Public Assistance for the purpose of placing her in an adoptive home *subject to the approval* of the Chief Juvenile Probation Officer for Chelan County and *the above entitled court.*

5. *That the orders herein shall be subject to further order of this court.* (Italics ours.)

Our holding in *In re Parker, supra,* may appear to conflict with our holding in *McClain, supra.* Both cases involved almost identical juvenile court orders. In *Parker,* we stated in passing that the juvenile court's jurisdiction continued after the order was entered. A careful reading of these two cases indicates that the holdings therein are not

---

[2]Although the record herein does not contain this order, we take judicial notice thereof from the certified record in the prior appeal, No. 38962. *Swak v. Department of Labor & Indus.,* 40 Wn.2d 51, 240 P.2d 560 (1952); *Perrault v. Emporium Dep't Store Co.,* 83 Wash. 578, 145 Pac. 438 (1915).

inconsistent. In *McClain,* the specific question raised was whether the juvenile court's jurisdiction over the child continued in any form after the order was entered. In answer, we held that the juvenile court in that case had intended to relinquish all jurisdiction. In *Parker,* however, the juvenile court's jurisdiction over the child was not in issue. The precise issue was whether the court, assuming it had retained jurisdiction after entering the order, had erred in subsequently ruling that the child's best interests would not be served by making the modifications requested by the parents, and we held that the parents had not met their burden of proving that the modifications would be for the child's best interests.

Judgment is reversed and remanded. However, the juvenile court is not limited to hearing only the testimony proffered by petitioner, but may consider any and all testimony and evidence pertinent to the child's welfare.

FINLEY, C. J., WEAVER and HALE, JJ., and LANGENBACH, J. Pro Tem., concur.